# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD
## 2015 MSPB 45

Docket No. DC-0752-13-0799-I-1

## Stephen M. Rodgers,[1]

## Appellant,

## v.

## Department of the Navy,

## Agency.

July 23, 2015

Stephen M. Rodgers, Williamsburg, Virginia, pro se.

Tracey Rockenbach, Esquire, Washington Navy Yard, D.C., for the agency.

### BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

### OPINION AND ORDER

¶1      The appellant has filed a petition for review of the initial decision, which affirmed the agency's furlough action. After fully considering the filings in this appeal, and based on the following points and authorities, we conclude that the petitioner has not established any basis under 5 C.F.R. § 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision.

---

[1] Pursuant to 5 U.S.C. § 1201.36(a), this appeal was part of a consolidation. *Navy Munitions Command I v. Department of the Navy*, MSPB Docket No. DC-0752-14-0383-I-1.

## BACKGROUND

¶2    On May 29, 2013, the agency proposed to furlough the appellant, an Attorney Advisor at the Navy Munitions Command (NMC) in Yorktown, Virginia, for no more than 11 workdays due to "extraordinary and serious budgetary challenges facing the Department of Defense . . . for the remainder of Fiscal Year . . . 2013, the most serious of which is the sequester that began on March 1, 2013." Initial Appeal File (IAF), Tab 1 at 7-9. On May 29, 2013, the appellant responded in writing to the notice of proposed furlough. IAF, Tab 3 at 5-6. On June 3, 2013, the deciding official, who was the Commander of NMC, requested that the entire NMC be subject to an exception to the proposed furlough. *Navy Munitions Command I v. Department of the Navy*, MSPB Docket No. DC-0752-14-0383-I-1, Consolidated Appeal File (CAF), Tab 3 at 32. The deciding official's request for an organization-wide exception was denied by the Director of the Navy Staff. *Id.* at 33-35. By written notice dated June 24, 2013, the deciding official notified the appellant that he would be furloughed as outlined in the proposal notice. IAF, Tab 1 at 10-12. The agency later reduced the duration of the furlough from 11 days to 6 days. Department of the Navy Administrative Record for FY 2013 Furlough Appeals (AR), Part 1, Tab 3, *available at* http://www.mspb.gov/furloughappeals/navy2013.htm. The appellant was furloughed on 6 nonconsecutive days. IAF, Tab 9 at 5-10.

¶3    The appellant filed an appeal, which the administrative judge consolidated with the appeals of similarly situated employees. CAF, Tab 1. After holding a hearing, the administrative judge issued an initial decision affirming the furlough. CAF, Tab 14, Initial Decision (ID).

¶4    The appellant has filed a petition for review. Petition for Review (PFR) File, Tab 1. The agency has filed a response in opposition to the appellant's petition for review. PFR File, Tab 2. The appellant has filed a reply to the agency's response. PFR File, Tab 4.

## ANALYSIS

<u>The appellant was provided with the required due process.</u>

¶5        The appellant argues that he was denied due process because the deciding official lacked any actual decision-making authority.  PFR File, Tab 1 at 4-5. Procedural due process rights derive from a property interest in which an individual has a legitimate claim of entitlement.  *Gajdos v. Department of the Army*, 121 M.S.P.R. 361, ¶ 13 (2014).  The appellant has a legitimate claim of entitlement to retention in pay status, and thus a property interest, pursuant to 5 U.S.C. §§ 7512(5) and 7513(a), which conditions his placement in a temporary status without duties and pay on such cause as will promote the efficiency of the service.  *See Gajdos*, 121 M.S.P.R. 361, ¶¶ 13-14.  Having found that the appellant has a property interest at stake in this appeal, the question remains as to what process is due, and whether the procedure the agency applied satisfied the mandates of due process.  *Id*., ¶ 14.

¶6        Due process is a flexible concept that calls for such procedural protections as the particular situation demands.  *See, e.g.*, *Gajdos*, 121 M.S.P.R. 361, ¶ 18; *Buelna v. Department of Homeland Security*, 121 M.S.P.R. 262, ¶¶ 16, 19 (2014). The appellant does not dispute that he received prior notice and an opportunity to respond, but argues that he was not provided a meaningful opportunity to respond because the deciding official was not empowered to make any decision except to uphold the proposed furlough.  PFR File, Tab 1 at 13-15.  To support his argument, the appellant relies on *McGriff v. Department of the Navy*, 118 M.S.P.R. 89 (2012), in which the Board held that constitutional due process requires that the deciding official have authority to take or recommend agency action based on the reply.  *McGriff*, 118 M.S.P.R. 89, ¶ 33.  Since issuing *McGriff*, the Board has clarified that due process does not require that the deciding official have the unfettered discretion to take any action he or she believes is appropriate upon considering the proposed adverse action.  *See Putnam v. Department of Homeland Security*, 121 M.S.P.R. 532, ¶ 12 (2014); *see*

*also Buelna*, 121 M.S.P.R. 262, ¶ 27 (stating that due process does not demand that the deciding official consider alternatives that are prohibited, impracticable, or outside of management's purview).

¶7       The Department of Defense issued guidance identifying categories of employees who would not be subjected to the furlough.[2]  AR, Part 1, Tab 12.  The agency described these categories as "limited exceptions driven by law and by the need to minimize harm to mission execution."  *Id.*  The agency instructed deciding officials to consider all employee replies and grant relief if one of these categorical exceptions applied, or another basis for granting individual relief existed under applicable law or the guidance provided by the Office of the Secretary of Defense.  AR, Part 1, Tab 6 at 38 of 135.  The undisputed evidence in the record establishes that the deciding official requested that his entire organization be excepted from the furlough due to its responsibility for safely moving ordnance, but the Director of the Navy Staff denied his request concluding that "[s]ufficient flexibilities exist to manage workload requirements and scheduling of furlough days should emergent situations arise."  CAF, Tab 3 at 32-34.  The deciding official testified that, after hearing the replies, he could have decided that individual employees met the criteria for one of the categorical exceptions.  PFR File, Tab 2 at 73-75; *see Gajdos*, 121 M.S.P.R. 361, ¶ 21 (noting that the agency's procedures ensured that the appellant did not fall within a furlough exemption).  The deciding official also could have recommended modification of the furlough if he concluded that an employee should be subject to an exception not previously recognized.  AR, Part 1, Tab 2, ¶ 12.  The deciding official's authority was limited in the sense that he could not have granted an organization-wide exception to the furlough for NMC.  But he possessed sufficient decision-making authority in the context of this agency-wide furlough

[2] The initial decision and the parties also refer to the categorical exceptions delineated in the Department of Defense's May 14, 2013 memorandum as "exemptions."

to satisfy the appellant's right to due process.[3] *See Gajdos*, <u>121 M.S.P.R. 361</u>, ¶¶ 20-23, 25 (finding that the procedures used by the agency did not deprive the appellant of constitutional due process even where the deciding official's discretion to invoke alternatives to the furlough was limited); *cf. Putnam*, <u>121 M.S.P.R. 532</u>, ¶ 12 (the right to due process is not violated by a deciding official's limited authority to select a penalty other than the proposed indefinite suspension for the revocation of a security clearance).

¶8        The appellant argues that the agency did not identify a "multi-tiered" decision-making process similar to the process utilized in *Gajdos*, and therefore the administrative judge's reliance on *Gajdos* was not appropriate.  PFR File, Tab 1 at 26.  We do not agree.  The agency's guidance to deciding officials gave them the authority to make decisions regarding individual furlough actions consistent with the organizational and categorical exceptions previously established by the Secretary of Defense.  AR, Part 1, Tab 2, ¶¶ 5-13, Tab 6 at 38 of 135.  Any major variations from this guidance required coordination in advance with the Assistant Secretary of the Navy, Manpower and Reserve Affairs.  AR, Part 1, Tab 8 at 50 of 135.

¶9        The appellant believes that the administrative judge erred by finding significant the fact that the deciding official used "Command Letterhead" to request an organization-wide exception to the furlough.  PFR File, Tab 1 at 14-15.  However, the initial decision does not mention the use of letterhead. *See* ID at 10-12.  The initial decision correctly finds that the deciding official testified that he requested the organization-wide exception for all 1,000 NMC civilian employees, not just the 15 employees for whom he was designated as the deciding official. *Id.*; PFR File, Tab 2 at 73-75.  He went on to testify that none

---

[3] In addition to the predeprivation opportunity to respond to the deciding official, the appellant also has had the opportunity to seek post-deprivation relief before the Board. *See Gajdos*, <u>121 M.S.P.R. 361</u>, ¶ 25.

of the employees for whom he had been designated as the deciding official individually met the criteria for the categorical exceptions. PFR File, Tab 2 at 76-77.

The agency did not commit harmful procedural error in processing the appellant's furlough.

¶10    Although we have found no constitutional violation, we must still consider whether the agency committed harmful procedural error. *See Stone v. Federal Deposit Insurance Corporation*, 179 F.3d 1368, 1378 (Fed. Cir. 1999) (stating that, in addition to the protections afforded by the Constitution, public employees are also entitled to "whatever other procedural protections are afforded them by statute, regulation or agency procedure"); *see also Pumphrey v. Department of Defense*, 122 M.S.P.R. 186, ¶ 9 (2015). An agency is required to follow its own rules in effecting an adverse action, regardless of whether those rules go beyond the requirements of government-wide statutes and regulations. *Canary v. U.S. Postal Service*, 119 M.S.P.R. 310, ¶ 11 (2013).

¶11    In this case, the agency followed its procedures. The appellant argues that, by denying the deciding official the authority to apply one of the categorical exceptions to his entire organization, the agency failed to follow its own procedures. PFR File, Tab 1 at 26. However, the agency's procedures delegated to deciding officials the authority to review individual employee replies and apply the approved categorical exceptions on a case-by-case basis. AR, Part 1, Tab 6 at 36-39 of 135. The deciding official testified that when he reviewed the individual replies to the proposed furlough none of the fifteen employees for whom he was designated as the deciding official met the criteria for an exception. PFR File, Tab 2 at 74-78. We find no support in the record for the proposition that the agency's procedures for implementing the furlough granted individual deciding officials the independent authority to make organization-wide exceptions to the furlough. *See* AR, Part 1, Tab 6 at 36-39 of 135.

<u>The agency did not treat the appellant differently than similarly situated employees.</u>

¶12    A furlough of 30 days or less is reviewable by the Board under the "efficiency of the service" standard of 5 U.S.C. § 7513(a). *Chandler v. Department of the Treasury*, 120 M.S.P.R. 163, ¶ 5 (2013). The Board has found that an agency satisfies the efficiency of the service standard by showing, in general, that the furlough was a reasonable management solution to the financial restrictions placed on it and that the agency applied its determination as to which employees to furlough in a "fair and even manner."[4]  *Id*., ¶ 8 (quoting *Clark v. Office of Personnel Management*, 24 M.S.P.R. 224, 225 (1984)). A fair and even manner means that the agency applied the furlough action uniformly and consistently. *Id*. An agency is not required to apply a furlough in such a way as to satisfy the Board's sense of equity. *Id*. An agency is required to treat similar employees similarly and to justify any deviations with legitimate management reasons. *Id*.

¶13    The appellant argues that the administrative judge erred by relying on reduction-in-force (RIF) principles in determining who was similarly situated for the purposes of the furlough. PFR File, Tab 1 at 19-20. He argues that the administrative judge should have identified similarly situated employees utilizing the principles applied in conducting a disparate penalty analysis. *Id.* Furloughs are unique among adverse actions because by definition they are taken for nondisciplinary reasons and generally are used to address work or funding shortages or other matters that are not personal to the affected employee. *Chandler*, 120 M.S.P.R. 163, ¶ 8. We find that the administrative judge's reliance on RIF principles in determining which employees were similarly situated to the appellant was appropriate. *See id*., ¶ 7; *see also Weathers v.*

---

[4] The appellant does not contest that the furlough was a reasonable management solution to the financial restrictions placed on it. PFR File, Tab 1 at 5.

*Department of the Navy*, 121 M.S.P.R. 417, ¶¶ 6, 8-9 (2014) (the Board is guided by RIF principles in making the determination of who is similarly situated in a furlough).

¶14    "Competitive area" principles may be used to determine who is similarly situated in a furlough. *See Weathers*, 121 M.S.P.R. 417, ¶ 8. Generally, a competitive area must be defined solely in terms of the agency's organizational units and geographical location. 5 C.F.R. § 351.402(b). The minimum competitive area is a subdivision of the agency under separate administration within the local commuting area. *Id.*

¶15    The appellant argues that the agency did not consistently impose the furlough among similarly situated employees because employees classified in his same series (GS-0905) who worked at the Norfolk Naval Shipyard in Portsmouth, Virginia, performing similar work were not furloughed. PFR File, Tab 1 at 5, 13, 21; CAF, Tab 5 at 10. The appellant argues that relying on RIF principles to determine who is similarly situated in a furlough is a "litmus paper UIC and Supervisor approach."[5] PFR File, Tab 1 at 20. The appellant's argument is not persuasive. The shipyard employees were not in the appellant's competitive area because they work in a different subdivision of the agency under separate administration. *See generally* CAF File, Tab 3 at 32-35 (NMC was treated as an independent subdivision of the agency for administration of the furlough). Thus, the appellant was not similarly situated to the attorneys assigned to the Norfolk Naval Shipyard for the purposes of this furlough, even if they performed similar duties.

---

[5] UIC is an abbreviation for Unit Identification Code, which the agency might use to determine an employee's source of funding.

The agency fairly and evenly applied its exception for employees assigned to Navy shipyards and properly determined that exception did not apply to the appellant.

¶16    Employees assigned to Navy shipyards were subject to an explicit exception from the furlough by the Department of Defense "because it would be particularly difficult to make up delays in maintenance work on nuclear vessels and those vessels are critical to mission success."  AR, Part 1, Tab 12 at 110 of 135.  The appellant argues that the administrative judge erred in accepting the agency's assessment that all of the employees assigned to the Norfolk Naval Shipyard should have been excepted from the furlough irrespective of their duties and responsibilities, but not also accepting his deciding official's similar assessment of NMC.  PFR File, Tab 1 at 15-16.  The appellant's argument fails to acknowledge that the exception applied to the shipyard employees was established by the Department of Defense's guidance and was not the assessment of an individual deciding official regarding his own organization.  In determining whether the agency structured a furlough in a fair and even manner, the Board will not scrutinize an agency's decision in such a way that second-guesses the agency's assessment of its mission requirements and priorities.  *Department of Labor v. Avery*, 120 M.S.P.R. 150, ¶ 10 (2013), *aff'd sub nom. Berlin v. Department of Labor*, 772 F.3d 890 (Fed. Cir. 2014).  Rather, the Board will consider issues relating to uniform and consistent application of the furlough, including whether the agency used the furlough to target employees for personal reasons or attempted to exempt certain employees from the furlough without a legitimate management reason.  *Chandler*, 120 M.S.P.R. 163, ¶ 9.  There is no indication in the record that the appellant or other NMC employees were targeted for personal reasons or that the agency exempted any employees without a legitimate management reason.  The Board will not second-guess the agency's decision to except shipyard employees, but not NMC employees, based on its assessment of mission requirements and the appellant has not argued that he

qualified for the exception for shipyard employees. Thus, we find no reason to disturb the administrative judge's conclusion that the agency fairly and evenly applied the furlough in the appellant's situation.

The appellant has not identified any adjudicatory error that would warrant a different outcome.

¶17    The appellant alleges a number of what he has identified as "procedural irregularities" during the hearing process. PFR File, Tab 1 at 22-25. He claims that the administrative judge rescheduled the hearing to accommodate the agency, and he notes that the record does not reflect "what had to be ex parte proceedings" in which this request was made or that the appellants were prepared to proceed on the date that the hearing was originally scheduled. *Id.* at 22-23. Not all ex parte communications are prohibited. 5 C.F.R. § 1201.101(a). Only those ex parte communications that involve the merits of the case or violate rules requiring submissions to be in writing are prohibited. *Id.* Here, even if ex parte communications occurred between the agency and the administrative judge, they concerned the scheduling of the hearing, not the merits of the appeal, and thus were not prohibited. *See Stec v. Office of Personnel Management*, 22 M.S.P.R. 213, 215 (1984). The appellant also appears to be arguing that the administrative judge should not have rescheduled the hearing to accommodate the agency's failure to prepare. We find no abuse of discretion in the administrative judge's decision to reschedule the hearing when the primary witness, the deciding official, was unavailable on the original hearing date.

¶18    The appellant notes that the administrative judge allowed the agency's representative to take breaks during the hearing to talk to a technical representative, but would not allow a diabetic appellant to take a break to eat when she started to feel ill. PFR File, Tab 1 at 24 n.14. Determining when and how many breaks to take during a hearing is a matter left to the broad discretion afforded to administrative judges to regulate the course of the hearing. 5 C.F.R.

§ 1201.41(b)(6).  We find no abuse of discretion in the manner in which the administrative judge scheduled breaks during the hearing.

¶19     The appellant also notes that a portion of the hearing is missing from the Board's audio recording of the hearing contained in the official record.  PFR File, Tab 1 at 16-17.  The appellant is correct.  *Compare* CAF, Tab 10, Hearing Compact Disc at 1:30:55-1:32:00, *with* PFR File, Tab 2 at 107-09.  The Board has held that when the record of the hearing contains material omissions of evidence necessary for the adjudication of an appeal, the evidence must be taken again.  *Walker v. Office of Personnel Management*, 52 M.S.P.R. 101, 104 (1991).  However, the testimony missing from the audio recording of the hearing in this matter was captured in the written transcript.  Moreover, this testimony is not material to the adjudication of this appeal.  The deciding official testified that, during a fast surge in Afghanistan and what the appellant has described as an "emergent Ordnance Evolution" called Odyssey Dawn, he would have needed all fifteen of the employees assigned to NMC headquarters who were furloughed.  PFR File, Tab 2 at 108.  However, there is no evidence in the record that either of these events was ongoing at the time that the decision to furlough the appellant was made.  On the contrary, the deciding official testified that all fifteen employees were furloughed without incident.  *Id*. at 106.

¶20     The appellant believes that the administrative judge's summary of the hearing testimony is inaccurate.  PFR File, Tab 1 at 23.  The appellant believes that the administrative judge made erroneous findings of fact by disregarding the testimony of the deciding official whenever it did not comport with the agency's position.  *Id.* at 24.  Having thoroughly reviewed the record, we find that the administrative judge's summary of the hearing testimony is accurate.

¶21     The appellant states that the administrative judge erred by not timely ruling on discovery motions.  *Id.* at 7-9, 24.  An administrative judge has broad discretion in ruling on discovery matters, and absent an abuse of discretion the Board will not find reversible error in such rulings.  *Vaughn v. Department of the*

*Treasury*, [119 M.S.P.R. 605](#), ¶ 15 (2013).  The administrative judge ruled on the outstanding discovery motions at the beginning of the hearing.  PFR File, Tab 2 at 22-26.  The appellant was granted additional discovery and permitted to supplement the record with any relevant evidence he obtained.  *Id.*  We find no abuse of discretion in the timing of this discovery ruling.

¶22    We have reviewed all of the appellant's arguments on review and find that they do not provide any reason to disturb the administrative judge's findings.

## ORDER

¶23    This is the final decision of the Merit Systems Protection Board in this appeal.  Title 5 of the Code of Federal Regulations, section 1201.113(c) ([5 C.F.R. § 1201.113](#)(c)).

### NOTICE TO THE APPELLANT REGARDING YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the United States Court of Appeals for the Federal Circuit.  You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order.  *See* [5 U.S.C. § 7703](#)(b)(1)(A) (as rev. eff. Dec. 27, 2012).  If you choose to file, be very careful to file on time.  The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed.  *See Pinat v. Office of Personnel Management*, [931 F.2d 1544](#) (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right.  It is found in Title 5 of the United States Code, section 7703 ([5 U.S.C. § 7703](#)) (as rev. eff.

Dec. 27, 2012).  You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode/htm. Additional information is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for an appeal to the United States Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

FOR THE BOARD:


_____
William D. Spencer
Clerk of the Board
Washington, D.C.